AO 91 (Rev. 11/11) Criminal Complaint (approved by AUSA KT Newton)  18-096

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| United States of America<br>v.<br><br>Maurice McCorkle<br><br><br>*Defendant(s)* | )<br>)<br>) Case No. 18-mj- 1422-M<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 27, 2015 to April 21, 2016__ in the county of __Philadelphia, PA & elsewhere__ in the __Eastern__ District of __PA and elswhere__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 371 | Conspiracy |
| 18 U.S.C. Section 1029(a)(5) | Access device fraud |
| 18 U.S.C. Section 1028A | Aggravated identity theft |
| 18 U.S.C. Section 2 | Aiding and abetting |

This criminal complaint is based on these facts:

Between on or about August 27, 2015 and on or about April 21, 2016, defendant Maurice McCorkle conspired with others to commit access device fraud and aggravated identity theft, and knowingly executed, and aided and abetted a scheme to commit access device fraud and aggravated identity theft, using victims' names and social security numbers, to make fraudulent purchases at K Mart stores, with fraudulently opened credit card accounts in the victims' names, in violation of Title 18, United States Code, Sections 371, 1029(a)(5), 1028A and 2.

☑ Continued on the attached sheet.

*Complainant's signature*

Anthony Del Signore, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9.7.18

*Judge's signature*

City and state: Philadelphia, Pennsylvania

Honorable Timothy R. Rice
*Printed name and title*

## AFFIDAVIT

I, Anthony Del Signore, having been duly sworn, depose and state as follows:

### A. Background

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI").

2. I have been a Special Agent with the FBI for approximately three years. I am authorized to conduct criminal investigations of violations of Title 18 of the United States Code. My responsibilities include investigation of financial crimes, which includes credit card fraud, identity theft and other related offenses. From June 2014 to September 2015, I was an Operational Support Technician for the FBI. My responsibilities included monitoring investigative communications and reviewing and obtaining information on investigative targets. From September 2008 to June 2014, I was a Legal Administrative Specialist for the FBI. My responsibilities included classifying and declassifying FBI documents and responding to Freedom of Information and Privacy Acts requests.

3. The information within this Affidavit is based upon my experience, personal knowledge and observations, as well as information from other sources, including documents, witness interviews, law enforcement databases, cellular telephone records, and information provided by a Citi Security and Investigative Services fraud investigator. Because this Affidavit is submitted for the sole purpose of establishing probable cause to support the issuance of a complaint and arrest warrant, what follows is not all of the information that has been uncovered during this investigation.

4. This Affidavit is in support of an application for an arrest warrant for MAURICE McCORKLE for violations of Title 18, United States Code, Sections 371 (conspiracy),

1029(a)(5) (access device fraud), 1028A (aggravated identity theft) and 2 (aiding and abetting) in connection with an investigation into a credit account fraud and identity theft scheme operating in the Eastern District of Pennsylvania.

**B.     Facts establishing Probable Cause**

### Initiation of investigation

5.     In July 2016, I began an investigation of numerous fraudulent purchases made at KMart stores, between approximately August 27, 2015 and April 21, 2016, using Sears credit accounts, issued by Citi and valid at KMart stores, that had been fraudulently obtained in victims' names. Based on information from cooperating witnesses, information and reports from the Ridley Township, Pennsylvania Police Department and the Newark, Delaware Police Department, as well as documentation and information provided by Citi Security and Investigative Services Investigator Justin Davis, there is probable cause to believe that MAURICE MCCORKLE participated in this fraudulent activity by: (a) recruiting individuals ("the runners") to make fraudulent purchases at KMart stores with fraudulently obtained Sears credit accounts to which they had been added as additional users; (b) transporting the runners to KMart stores to make purchases with the fraudulently obtained credit accounts; and (c) receiving from the runners the merchandise purchased at KMart stores with the fraudulent Sears credit accounts.

6.     I learned from Investigator Davis that he had been investigating a fraud scheme operating in 2015 and 2016 in which victims' personal identifying information ("PII"), including the victims' name, date of birth and social security number, were used to fraudulently open Sears credit card accounts with Citi online and by telephone. According to Investigator Davis, once those fraudulent credit accounts were opened, the names of the runners were then added to those

accounts as additional users so that the runners could then make purchases on those fraudulently opened accounts without having the actual Sears credit cards in the victims' names. I further learned from Investigator Davis that most of the purchases made with the fraudulently opened Sears credit accounts by the runners had been made at KMart store locations, as KMart is owned by Sears.

### Information provided by Dearie Scott

7. I interviewed Dearie Scott, who participated in the fraud scheme and has been charged elsewhere, and she provided the following information about MAURICE McCORKLE's involvement in this scheme:

    a. McCORKLE recruited runners to make fraudulent purchases at KMart stores.

    b. From in or about December 7, 2015 to on or about April 21, 2016, Scott participated as a runner in the scheme – she was added as an additional user to fraudulently opened Sears credit accounts and McCORKLE took Scott to KMart stores on different occasions to make fraudulent purchases using those accounts.

    c. McCORKLE introduced Scott to Cooperating Witness 4 ("CW4"), who, like Scott, also participated as a runner in the scheme.

8. My review of Citi and KMart documentation shows that, from in or about December 2015 to April 2016, Dearie Scott made approximately $82,717 worth of fraudulent purchases at KMart stores, using fraudulently opened Sears credit card accounts to which she had been added as an additional user.

### Information provided by Cooperating Witness 1 ("CW1")

9.   I interviewed CW1, who has 2010 convictions for terroristic threats and criminal mischief and who has not received any monetary or other benefit from the FBI in connection with this investigation. CW1 participated in the fraud scheme and provided the following information about MAURICE McCORKLE's involvement in this scheme:

   a.   Between in or about August 2015 to in or about April 2016, McCORKLE recruited runners to make fraudulent purchases at KMart stores and provided CW1 with the names of the runners he recruited, and CW1 then added those runners' names as additional users to Sears credit accounts that had been fraudulently opened in victims' names via telephone calls to Sears Credit Services.

   b.   McCORKLE drove runners to KMart stores to make purchases with the fraudulently opened Sears accounts to which they had been added as additional users.

   c.   CW1 identified McCORKLE as the individual shown on MAURICE McCORKLE's Pennsylvania driver's license photograph.

### Information provided by Cooperating Witness 2 ("CW2")

10.   I interviewed CW2, who has 2013 convictions for reckless endangerment, use of false identification, driving with a suspended license, driving without insurance and careless driving, 2009 and 2014 convictions for theft, and a 2018 conviction for forgery, and has not received any monetary or other benefit from the FBI in connection with this investigation. CW2 participated in the fraud scheme and provided the following information about MAURICE McCORKLE's involvement in this scheme:

   a.   CW2 has known McCORKLE for approximately 15 years.

      b.      CW2 introduced McCORKLE to CW1, and, sometime after that introduction, McCORKLE and CW1 began running a fraud scheme together in which fraudulent Sears credit accounts were opened with stolen PII of victims, and the names of runners were then added to the fraudulent credit accounts as additional users to allow the runners to make fraudulent purchases at KMart stores with those credit accounts.

      c.      McCORKLE drove runners to KMart stores to make fraudulent purchases with the fraudulent credit accounts to which the runners had been added as additional users.

      d.      The runners delivered the merchandise purchased with the fraudulent Sears credit account to McCORKLE or CW1.

      e.      McCORKLE and CW1 sold most of the fraudulently-purchased merchandise delivered by the runners.

      f.      McCORKLE recruited CW2 as a runner in the scheme and, for a short period of time, from on or about August 27 to September 15, 2015, CW2 made purchases with the fraudulent Sears credit accounts to which CW2 had been added as an additional user.

      g.      Prior to making a fraudulent purchase at a KMart store, CW2 received, from CW1 or McCORKLE, a text message with the victim's social security number, which was needed to make purchases with the fraudulent credit account opened in the victim's name at the KMart store.

      h.      On one occasion, McCORKLE rented a car for CW2 to drive to KMart stores to make fraudulent purchases, CW2 used that rented car for approximately one week, and CW2 then returned the rented car to McCORKLE, also delivering to McCORKLE at that time the merchandise that CW2 had purchased from KMart stores with the fraudulent Sears credit accounts to which CW2 had been added as an additional user.

11. My review of Citi and KMart documentation shows that CW2 made approximately $4,214 worth of fraudulent purchases at KMart stores, using fraudulently opened Sears credit card accounts to which CW2 had been added as an additional user.

### Information provided by Cooperating Witness 3 ("CW3")

12. I interviewed CW3, who has a 2003 conviction for retail theft and a 2004 conviction for illegal drug possession and who has not received any monetary or other benefit from the FBI in connection with this investigation. CW3 participated in the fraud scheme, and provided the following information about MAURICE McCORKLE's involvement in this scheme:

   a. CW3 identified McCORKLE as a member of CW3's family and as the individual shown on MAURICE McCORKLE's Pennsylvania driver's license photograph.

   b. McCORKLE recruited CW3 to participate in a fraud scheme in which CW3 made purchases at KMart stores using fraudulently opened Sears credit accounts to which CW3 had been added as an additional user.

   c. In or about October 2015, McCORKLE drove CW3 to KMart stores and, at McCORKLE's direction and using the fraudulently opened Sears credit accounts to which CW3 had been added as an additional user, CW3 purchased items for herself/himself and purchased gift cards which CW3 gave to McCORKLE.

13. My review of Citi and KMart documentation shows that CW3 made approximately $9,508 worth of fraudulent purchases at KMart stores, using fraudulently opened Sears credit card accounts to which CW3 had been added as an additional user.

### Information provided by Cooperating Witness 4 ("CW4")

14. I interviewed CW4, who has 4 convictions between 2002 and 2006 for prostitution and who has not received any monetary or other benefit from the FBI in connection with this investigation. CW4 participated in the fraud scheme and provided the following information about MAURICE McCORKLE's involvement in this scheme:

    a. CW4 has spent significant time with McCORKLE in the past several years.

    b. McCORKLE drove runners, including CW4, to KMart stores to make fraudulent purchases with fraudulently opened credit accounts to which the runners had been added as additional users.

    c. From on or about January 15 to April 5, 2016, CW4 participated as a runner in the scheme—he/she was added as an additional user to fraudulently opened Sears credit accounts and McCORKLE drove CW4 to KMart stores on different occasions.

    d. McCORKLE, CW1 and CW2 all know each other and are friendly with each other.

15. My review of Citi and KMart documentation shows that CW3 made approximately $40,142 worth of fraudulent purchases at KMart stores, using fraudulently opened Sears credit card accounts to which CW4 had been added as an additional user

### Information obtained from Dearie Scott's cell phones

16. The FBI has examined two cell phones that were seized from Dearie Scott and for which Scott gave consent to search: (a) a cell phone seized by Ridley Township, Pennsylvania police officers on or about April 25, 2016; and (b) a cell phone seized by Newark, Delaware police officers on or about March 16, 2016, and that examination revealed the following:

        a.       267-393-6855 was listed in Scott's contact list as a number for "Marice".

        b.       The call log on one of those cell phones shows that there were 35 phone calls to 267-393-6855 on dates that Scott made or attempted to make fraudulent purchases at KMart stores.

        c.       There were 33 text messages with 267-393-6855 on one of those cell phones on dates that Scott made or attempted to make fraudulent purchases at KMart store, all relating to transportation or fraudulent purchase arrangements in connection with the fraud scheme.

### Information obtained from CW4 phone

17.      The FBI obtained a search warrant for, and subsequently examined, two cell phones that were seized from CW4 by Newark, Delaware police officers on or about March 16, 2016, and that examination revealed the following:

        a.       The call log on one of the phones established that there were 29 total calls to phone numbers 267-393-6855 and 267-403-8273 on dates that CW4 made or attempted to make fraudulent purchases at KMart stores.

        b.       There were a total of 196 text messages to 267-393-6588 and 267-403-8273 on one of the phones on dates that CW4 made or attempted to make fraudulent purchases at KMart stores, all relating to transportation, fraudulent purchase arrangements or issues about fraudulent purchases.

### Identification of McCORKLE'S Phone Numbers

18. On February 8, 2018, McCORKLE, using 267-393-6855, called me and told me that he wanted to speak with the FBI to clear his name regarding this particular fraud scheme.

19. According to a law enforcement database, McCORKLE is associated with T-Mobile telephone numbers 267-403-8273 and 267-393-6855.

### Information provided by Citi Bank

20. Citi provided an audio recording of a male caller, using the name of victim S.W., who called Sears Credit Services about a Sears credit card application for S.W. In that recording:

    a. The caller provided the PII of S.W.

    b. The caller provided 267-393-6855 as the phone number to be used to receive a text message from Sears Credit Services for verification purposes.

    c. The caller answered security questions and completed the application in the name of S.W.

### Conclusion

21. Based on these facts, and my training and experience, there is probable cause to believe that MAURICE McCORKLE participated in an access device and identity theft fraud scheme by participating in the fraudulent credit account application process, recruiting runners to have their names added as additional users to fraudulently opened Sears credit accounts in victims' names, driving runners to KMart stores to make purchases with those fraudulent Sears credit accounts; and receiving and selling merchandise purchased with those fraudulent Sears credit accounts.

22. Based on the above facts, there is probable cause to believe that MAURICE McCORKLE conspired to commit access device fraud and aggravated identity theft, in violation of 18 U.S.C § 371, and committed and aided and abetted access device fraud and aggravated identity theft, in violation of 18 U.S.C §§ 1029(a)(5), 1028A and 2.

_____
ANTHONY DEL SIGNORE
Special Agent, Federal Bureau of Investigation

SWORN AND SUBSCRIBED BEFORE ME
THIS ___ DAY OF _____, 2018

_____
HONORABLE TIMOTHY R. RICE
UNITED STATES MAGISTRATE JUDGE